Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Centro Médico del Turabo, Inc. D/B/A Grupo HIMA San Pablo | Certiorari |
| Peticionarios | |
| v. | 2011 TSPR 35 |
| Departamento de Salud del Estado Libre Asociado de Puerto Rico,etc. | 181 DPR _____ |
| Recurridos | |

Número del Caso:          CC- 2009 - 463   cons.    CC- 2009 - 458

Fecha: 16 de marzo de 2011

Tribunal de Apelaciones:

Región Judicial de Bayamón Panel VII

Juez Ponente:

Hon.    Carmen A. Pesante Martínez

CC- 2009 - 463
Abogadas de la Parte Peticionaria

Lcda. Janitza M. García Marrero
Lcda. Giselle López Soler
Lcda. Heidi L. Rodríguez Benítez

Oficina del Procurador General

Lcda. Va     lerie Díaz Aponte
Procura    dora General Auxiliar

Lcda. Karla Z. Pacheco Álvarez
Procuradora General Auxiliar

CC- 2009 - 468
Oficina del Procurador General

Lcda. María C. Umpierre Marchand
Procuradora General Auxiliar

Abogadas de la Parte Recurrida:

Lcda. Janitza M. García Marrero
Lcda. Giselle López Soler
Lcda. Heidi L. Rodríguez Benítez

Materia: Impugnación del Reglamento núm. 117                - A del Secretario de
Salud, Reglamento 7634 del 17 de diciembre de 2008

Este documento constituye un documento                oficial del Tribunal
Supremo que está sujeto a los cambios y correcciones del proceso
de compilación y publicación oficial de las decisiones del
Tribunal. Su distribución electrónica se hace como un servicio
público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Centro Médico del Turabo, Inc.
D/B/A Grupo HIMA San Pablo

    Peticionarios

       v.                  CC-2009-463   Certiorari

Departamento de Salud del     Cons. CC-2009-468
Estado Libre Asociado de
Puerto Rico, etc.

    Recurridos

Opinión del Tribunal emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 16 de marzo de 2011.

El presente caso requiere que nos expresemos por primera vez sobre el procedimiento de aprobación de reglamentos con vigencia inmediata dispuesto en la Sec. 2.13 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2133. En específico, debemos determinar si el Departamento de Salud y el Gobernador cumplieron con los requisitos del referido estatuto al aprobar el Reglamento Núm. 117-A de 2008. Por entender que ambos incumplieron con los requisitos allí dispuestos al no

fundamentar detalladamente las circunstancias que exigían la utilización del procedimiento de aprobación de reglamentos de emergencia, revocamos la sentencia del Tribunal de Apelaciones que decidió lo contrario.

I.

En noviembre de 2008, el Secretario de Salud aprobó el Reglamento Núm. 117-A, Reglamento Núm. 7634 de 17 de diciembre de 2008, para enmendar el Reglamento Núm. 117 del Departamento de Salud que regula el licenciamiento, operación y mantenimiento de los hospitales en Puerto Rico. Reglamento Núm. 6921 del Departamento de Salud de 21 de diciembre de 2004. El Reglamento 117-A busca delimitar el procedimiento para que los pacientes o sus responsables presten su consentimiento informado a toda intervención médica luego recibir la correspondiente orientación. Dicho Reglamento prohíbe que se incluyan cláusulas legales de selección de foro dentro de los formularios de consentimiento informado, restricciones de cualquier tipo al derecho del paciente terminal a recibir consultoría espiritual y, además, ordena el establecimiento de comités de asuntos ético-hospitalarios.

Posteriormente, el Gobernador firmó una Certificación en la que indicó que, de conformidad con lo dispuesto en la Sec. 2.13 de la L.P.A.U., *supra*, el interés público requería la inmediata puesta en vigor del Reglamento 117-A, bajo el procedimiento de emergencia. El 17 de diciembre de 2008, el Secretario de Salud presentó el Reglamento 117-A y

la Certificación del Gobernador ante el Departamento de Estado, donde se le asignó el número 7634.

El 4 de febrero de 2009, el Centro Médico del Turabo, Inc. h/n/c Grupo HIMA San Pablo (HIMA), presentó una acción de nulidad al amparo del Art. 2.7 de la L.P.A.U., 3 L.P.R.A. 2127, e impugnó el procedimiento de aprobación del Reglamento 7634. Alegó, en síntesis, que el reglamento es nulo *ab initio* porque el Departamento de Estado no hizo el aviso público dentro de los 25 días a partir de su presentación, según dispone la Sec. 2.8(d) de la L.P.A.U., 3 L.P.R.A. 2128. Sostuvo que, al no habérsele notificado el reglamento que desde entonces venía obligado a seguir, el término para impugnarlo estaba suspendido. Adujo, además, que no se podía emplear el procedimiento de aprobación de reglamentos de vigencia inmediata al amparo de la Sec. 2.13 de la L.P.A.U., *supra*, porque la Certificación emitida por el Gobernador no consignaba suficientes circunstancias que justificaran su uso.

El Departamento de Salud compareció por conducto de la Oficina de la Procuradora General y alegó, en esencia, que el requisito de publicación dispuesto en la Sec. 2.8 de la L.P.A.U., *supra*, contrario a lo que sostiene HIMA, se refiere a la publicación que ha de hacerse luego de que se complete el trámite ordinario de aprobación de reglamentos según lo dispone el Art. 2.13 de la L.P.A.U., *supra*. Sostuvo que en vista del cambio de gobierno y el receso navideño, aún estaba a tiempo de comenzar a cumplir con los

requisitos de aprobación de reglamentos presentados al amparo del procedimiento expedito de vigencia inmediata.

El Tribunal de Apelaciones resolvió que se cumplieron los requisitos de aprobación de reglamentos sin previa publicación, por lo que no le asistía la razón a HIMA en cuanto a que el Reglamento 7634 es nulo *ab initio* o que el término para impugnarlo esté suspendido. Determinó, además, que no contaba con los elementos para evaluar si la situación justificaba el uso del procedimiento de vigencia sin publicación, pues el Departamento de Salud todavía no había realizado el proceso de publicación y comentarios exigido por las Secs. 2.1-2.3 de la L.P.A.U., 3 L.P.R.A. secs. 2121-2123 y que, debido a que HIMA estaba obligado a cumplir con el Reglamento sin poder, hasta ese momento, participar del procedimiento de aprobación, suspendería su vigencia hasta tanto se completara el procedimiento ordinario de aprobación.

Inconforme, HIMA acudió ante nos mediante el recurso de *certiorari* CC-2009-463 y alegó que el Tribunal de Apelaciones erró al no haber evaluado la procedencia en este caso del uso del procedimiento de vigencia inmediata dispuesto en la Sec. 2.13 de la L.P.A.U., *supra*, al resolver que no es necesario publicar el reglamento hasta tanto se complete el procedimiento preterido y al suspender la vigencia del reglamento en vez de decretar su nulidad absoluta. Por su parte, el Departamento de Salud acudió ante nos mediante el recurso de *certiorari* CC-2009-468 y

alega, como único señalamiento de error, que erró el foro apelativo intermedio al decretar la suspensión del reglamento en cuestión, a pesar de que un reglamento aprobado en virtud de la Sec. 2.13 de L.P.A.U., *supra*, tiene vigencia inmediata, una vez se presenta ante el Departamento de Estado.[1]

Examinados ambos recursos, ordenamos su consolidación y acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

Como es sabido, la L.P.A.U. requiere que las agencias administrativas observen ciertos requisitos mínimos al aprobar las llamadas reglas "legislativas". Centro Unido Detallistas v. Com. Serv. Púb., res. el 11 de julio de 2008, 2008 T.S.P.R. 116. Esto es, al aprobar ese conjunto de normas de contenido sustantivo que complementan la ley, crean derechos, imponen obligaciones y establecen un patrón de conducta. *Íd*. En específico, la L.P.A.U. exige que se

---

[1]El caso de autos representa la tercera vez que HIMA comparece ante nos para tratar de impedir que se le prohíba, por parte de nuestras agencias de salud pública, la inclusión de cláusulas legales de selección de foro en los documentos que se presentan a los pacientes como parte del proceso de consentimiento informado. No obstante, esa práctica ha sido válidamente prohibida en nuestro ordenamiento. Véase Reglamento Núm. 7617 del 21 de noviembre de 2008 de la Oficina de la Procuradora del Paciente de Puerto Rico. Véase además, Centro Médico del Turabo, Inc., D/B/A Grupo HIMA San Pablo v. Oficina de la Procuradora del Paciente, KLRA0800659, resuelto el 8 de septiembre de 2008. Denegamos expedir el *Certiorari* en dicho recurso el 17 de abril de 2009, CC-2008-965; Centro Médico del Turabo, Inc. D/B/A Grupo HIMA San Pablo, KLRA200900191, resuelto el 26 de agosto de 2009. Denegamos expedir el *Certiorari* en ese recurso, CC-2009-827, el 13 de abril de 2010.

cumpla con los requisitos de notificación, participación ciudadana, presentación y publicación. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 690-691 (2000).

Primeramente, la L.P.A.U. exige que cuando una agencia se proponga adoptar, enmendar o derogar una regla o reglamento debe cumplir con un requisito de notificación mediante la publicación de un aviso en el que se detalle el propósito de la reglamentación propuesta, la fuente legal que la autoriza y la forma en la que se podrán someter comentarios o solicitar la celebración de una vista. 3 L.P.R.A. secs. 2121-2123.

Luego de dicha etapa inicial, comienza un proceso de participación ciudadana dentro del cual la agencia confiere al menos 30 días para que las personas sometan sus comentarios y propuestas por escrito o soliciten la celebración de vistas. 3 L.P.R.A. sec. 2122. La agencia podrá celebrar vistas de forma discrecional, a menos que por ley se le requiera. 3 L.P.R.A. sec. 2123. Es imperativo que la agencia también mantenga un expediente disponible al público con todo lo relativo al procedimiento de adopción, enmienda o derogación de la regla o reglamento en cuestión. 3 L.P.R.A. sec. 2126. Esta etapa es esencial, pues la participación ciudadana trae ante la consideración de la agencia perspectivas distintas sobre el alcance y aplicación de las reglas que pretende aprobar D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento

Administrativo Uniforme, Forum, Bogotá, 2da ed., 2001, págs. 114-115.

La Sec. 2.8(a) de la L.P.A.U. dispone que, luego de que culmine el proceso de participación ciudadana, toda agencia que haya aprobado un reglamento debe cumplir con un procedimiento de presentación de éste ante el Departamento de Estado. 3 L.P.R.A. sec. 2128. Asimismo, establece que, como regla general, los reglamentos entrarán en vigor a los treinta (30) días de su presentación ante dicho departamento. No obstante, acto seguido, la Sec. 2.8(a) detalla tres excepciones: (1) que por ley se disponga otra fecha de vigencia; (2) que mediante el propio reglamento se disponga otra fecha, siempre que la ley lo autorice y (3) que se trate de un reglamento de emergencia, o sea, de vigencia sin previa publicación según lo dispuesto en la Sec. 2.13 del referido estatuto, 3 L.P.R.A. sec. 2133. *Íd.*

Por último, es preciso que se cumpla con un procedimiento de publicación del reglamento. A estos efectos, el inciso (b) de la Sec. 2.8 de la L.P.A.U. dispone que, "el Secretario [de Estado] publicará en dos (2) periódicos de circulación general una síntesis del contenido de cada reglamento radicado, con expresión de su número, fecha de vigencia y agencia que lo aprobó. Esta publicación se llevará a efecto dentro de los veinticinco (25) días siguientes a la fecha de su radicación". 3 L.P.R.A. sec. 2128. El fin de esta norma es cumplir con el requisito de notificación, elemento indispensable para

validar la reglamentación y darle virtualidad al principio básico, consignado en el Art. 2 del Código Civil de Puerto Rico de que la ignorancia de la ley no es excusa para su incumplimiento. D. Fernández Quiñones, op. cit., págs. 116-117.

Según se desprende de lo anterior, el propósito de los procedimientos de notificación, participación ciudadana, presentación y publicación es garantizarle a los ciudadanos que serán notificados y tendrán una oportunidad de que se consideren sus puntos de vista antes de que se adopte una norma que impacte sus derechos y les imponga obligaciones.

No obstante, la L.P.A.U. contiene un mecanismo mediante el cual una agencia podrá, **en casos excepcionales**, aprobar un reglamento de vigencia inmediata sin tener que cumplir con la totalidad de los requisitos antes descritos. En concreto, la Sec. 2.13 de la L.P.A.U., *supra*, dispone que cuando el Gobernador certifique que los intereses públicos exigen que el reglamento entre en vigor inmediatamente, pues existe una emergencia o cualquier otra circunstancia que lo justifique, el secretario de la agencia someterá ante el Departamento de Estado la referida certificación y el reglamento en cuestión.

La sección en cuestión exige, sin embargo, que la agencia cumpla posteriormente con los procedimientos de notificación y participación ciudadana y someta cualquier enmienda o modificación al Departamento de Estado. En lo pertinente, establece que:

> [u]na vez así radicado el reglamento, o la enmienda al mismo, la agencia dará cumplimiento a lo dispuesto en las Secciones 2.1, 2.2, 2.3 de esta ley, y, de determinar modificaciones o enmiendas al reglamento radicado al amparo de esta sección, radicará las mismas en la oficina del Secretario de Estado, y se le dará cumplimiento a lo dispuesto en la Sección 2.8 de esta ley. Ley 170 de 12 de agosto de 1988, según enmendada por la Ley Núm. 43 de 6 de agosto de 1989, 1989 Leyes de Puerto Rico 161-162.

Por último, cabe señalar que la Sec. 2.7 de la L.P.A.U. preceptúa una "acción de nulidad" o "acción de impugnación" con el fin de uniformar la revisión judicial de las acciones tomadas por las agencias al promulgar sus reglamentos. Centro Unido Detallistas v. Com. Serv. Púb.,*supra*, pág. 9. Como una agencia no tiene discreción para apartarse del procedimiento establecido en la L.P.A.U., es preciso evaluar qué requisitos de dicha ley son de ineludible cumplimiento para así poder evaluar si se produjo un incumplimiento sustancial de la ley. *Íd*. A tenor con ello, la referida sección establece que las reglas o reglamentos que se aprueben en contravención a la propia L.P.A.U. serán nulos. 3 L.P.R.A. sec. 2127. A esos efectos, dispone que cualquier persona podrá impugnar de su faz una regla o reglamento inválido mediante un recurso interpuesto en el Tribunal de Apelaciones dentro de los 30 días siguientes a la fecha de su vigencia. *Íd*.

III.

Desafortunadamente, la L.P.A.U. guarda silencio sobre lo que constituye una "emergencia" o una "circunstancia" particular que exija que se obvie el trámite ordinario de

aprobación de reglamentos y se emplee la Sec. 2.13. Tampoco nos hemos expresado al respecto. No obstante, hemos interpretado el término "emergencia" en otros contextos, por lo que resulta conveniente reseñar dicha jurisprudencia.

En Meléndez v. Valdejully, 120 D.P.R. 1 (1987),interpretamos el término emergencia dispuesto en el Art. 4 de la Ley 21 de 31 de mayo de 1985, conocida como la Ley Uniforme para la Revisión y Modificación de Tarifas. En dicho caso, dispusimos, entre otras cosas, que "el concepto 'emergencia' no necesariamente se limita a una circunstancia imprevista, sino que comprende un suceso o combinación y acumulación de circunstancias que exigen inmediata actuación. 'Emergencia' es sinónimo de 'urgencia', 'prisa'". Meléndez v. Valdejully, pág. 32 (citas omitidas). Allí también aplicamos los criterios esbozados en Potomac Elec.Power v. Public Service Comission of Dist. Of Col., 457 A.2d 776 (D.C. App. 1983) para determinar si una agencia que provee servicios básicos se encuentra ante una situación de emergencia, a saber:

> (1) si existe una amenaza actual o claramente inminente de que la agencia será incapaz de continuar llevando a cabo su gestión de servicio público, y (2) una amenaza actual o claramente inminente de que la Agencia será incapaz de obtener fondos necesarios para financiar la construcción de plantas nuevas o de reemplazo necesarias. Meléndez v. Valdejully, pág. 33.

Posteriormente, en Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994) nos expresamos sobre la procedencia de la

utilización por parte de un municipio del mecanismo de adquisición de bienes en situaciones de emergencia. Específicamente, interpretamos el concepto de emergencia dispuesto en la Sec. 7.03 de la entonces vigente Ley Orgánica de los Municipios de Puerto Rico. 21 L.P.R.A. sec. 3203 (Sup. 1986). A tenor con aquella sección, que autorizaba al alcalde a utilizar un mecanismo especial de adquisición de bienes en casos de emergencia, se requería "un suceso o combinación ocasional de circunstancias que exija inmediata acción". *Íd*. Al aplicar la definición provista en la ley a los hechos específicos de aquel caso, resolvimos que no procedía emplear el mecanismo de adquisición de emergencia, ya que el tipo de equipo que se pretendió adquirir no podía ser adquirido de forma inmediata sino que debía ser confeccionado a la medida. En vista de ello, estimamos que si había que esperar varios meses en lo que se fabricaba el equipo, no se justificaba que se hubiese obviado el procedimiento ordinario de adquisición de bienes mediante subasta pública.

Años más tarde, en R&B Power, Inc. v. E.L.A., 170 D.P.R. 606 (2007), otro caso sobre adquisición de bienes en situaciones de emergencia, interpretamos el concepto de "estado de emergencia" dispuesto en la Ley Núm. 92 de 31 de marzo de 2004, que enmendó la Ley Orgánica de la AAA. Mediante la Ley Núm. 92 se autorizó a la

> Junta de Directores [de la AAA] a eximir del requisito de 'subasta pública y licitación para la adjudicación de contratos de construcción y compras u otros contratos

> cuando por situación de emergencia se estime que es necesario y conveniente a los fines de proteger la vida o la salud… o para evitar incumplimientos ambientales que pudieran dar lugar a la imposición de multas…. R& B Power, Inc. v. E.L.A., *supra*, pág. 612.

En virtud de dicha autorización la Junta de Directores de la AAA utilizó un requerimiento de propuestas para adquirir vehículos con el fin de reemplazar parte de su flota y evitar multas federales por incumplimientos con leyes ambientales. Resolvimos que el uso de dicho método para adquirir los bienes fue legítimo y que, de impugnarse la adjudicación de la buena pro, los tribunales tendrían la facultad de revisar la declaración del estado de emergencia en sí. Advertimos, además, que se trataba allí de una facultad extraordinaria y que "sólo la escrupulosa adhesión a lo que constituye una emergencia evitará el despilfarro de fondos públicos". *Íd.*, pág. 625 (Citando a Hatton v. Mun. de Ponce, *supra*). Expresamos también que la flexibilidad que da la sección allí en controversia "no puede convertirse en patente de corso" ni "puede convertirse en la norma y así servir de subterfugio para soslayar el mecanismo normal". *Íd.*

Unos meses después, en Acevedo Vilá v. C.E.E., 172 D.P.R. 971 (2007), analizamos el concepto de "situación extraordinaria" dispuesto en el Reglamento para el Control de Gastos de Difusión Pública del Gobierno para el Referéndum de 10 de julio de 2005 como excepción a la prohibición de difundir anuncios gubernamentales durante

una veda electoral dispuesta en el Art. 8.001 de la Ley Electoral, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3001 *et seq*. Dicho estatuto prohíbe la difusión de anuncios gubernamentales durante el periodo de veda electoral y, a modo de excepción, permite que se solicite una autorización previa a la Comisión Estatal de Elecciones en casos de interés público, urgencia o emergencia. 16 L.P.R.A. 3351. El reglamento en cuestión, por su parte, definía 'urgencia o emergencia' como una:

> [s]ituación de carácter súbito o imprevisto, ocasionada por actos del hombre o de la naturaleza, que requiere la inmediata divulgación de información por parte de una agencia, según el ámbito de sus deberes y funciones, a los fines de proteger la vida, la propiedad o los derechos de la ciudadanía. Sec. 1.4(16).

No obstante, el referido reglamento permitía que se difundieran anuncios gubernamentales ante 'situaciones extraordinarias' sin autorización previa, siempre y cuando se solicitara dentro de las 48 horas siguientes a la transmisión. Al analizar si la situación fiscal que atravesaba Puerto Rico en aquel momento justificó la difusión del mensaje del ex Gobernador sin solicitar autorización previa expresamos que, si bien en el contexto administrativo el concepto de 'emergencia' no necesariamente se limita a una circunstancia imprevista, sino que comprende un suceso o combinación y acumulación de circunstancias que exigen inmediata actuación, Meléndez v. Valdejully, 120 D.P.R. 1 (1987), dicha situación no es suficiente para fundamentar la legalidad de acogerse al

mecanismo de autorización posterior a la difusión del mensaje. Acevedo Vilá v. C.E.E., *supra*, 992.

En cuanto al concepto de 'situación extraordinaria' que, de configurarse, sí permitía utilizar el mecanismo de autorización posterior expresamos que, además de tratarse de una emergencia, es una situación en la que "existe una inminente lesión al interés público, de modo que una demora en la expresión gubernamental ofenda el sentido de la justicia; ocasione daños irreparables; perjudique los derechos constitucionales de la ciudadanía; derrote el orden de la ley e incida indefectiblemente sobre la sana convivencia social". *Íd.*, pág. 24.

Por último, en San Gerónimo Caribe Project v. A.R.Pe., res. el 31 de julio de 2008, 2008 T.S.P.R. 130, interpretamos la Sec. 3.17 de la L.P.A.U., 3 L.P.R.A. sec. 2167, sobre procedimientos adjudicativos de acción inmediata. En lo pertinente, la Sec. 3.17 dispone que: "[u]na agencia podrá usar procedimientos adjudicativos de emergencia en una situación en que exista un peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia". 3 L.P.R.A. 2167.

Al evaluar la procedencia de la revocación sumaria de unos permisos de construcción mediante el procedimiento de acción inmediata de la Sec. 3.17 de la L.P.A.U., expresamos que no se justificaba el uso del mecanismo sumario para revocar los permisos en controversia. Ello, pues una

emergencia "comprende un suceso o combinación y acumulación de circunstancias que exigen inmediata actuación. Emergencia es sinónimo de urgencia, necesidad, prisa". San Gerónimo Caribe Project v. A.R.Pe., *supra*, pág. 29 citando a Meléndez v. Valdejully, *supra*, pág. 22-23 (1987). Expresamos que:

> [t]oda vez que el procedimiento de acción inmediata es una excepción que permite a las agencias desviarse del cauce ordinario que garantiza el derecho al debido proceso de ley, las circunstancias que invoque deben evaluarse cuidadosamente, tomando en cuenta que la situación de ser extraordinaria y realmente excepcional, que implique la existencia de un peligro inminente para la salud, la seguridad y el bienestar público. San Gerónimo Caribe Project v. A.R.Pe., *supra*, pág. 29.

Finalmente, expresamos que "para que la actuación sumaria esté justificada debe estar en juego un interés apremiante del estado que pudiera ser afectado por una situación extraordinaria que no pueda protegerse mediante los mecanismos ordinarios del andamiaje gubernamental. En tales casos, el derecho a ser oído debe ceder". *Íd*.

Expuesto lo anterior, resulta pertinente, a modo ilustrativo, reseñar las disposiciones del Administrative Procedure Act, 5 U.S.C.A. secs. 500 *et seq* (A.P.A.), legislación análoga a nuestra L.P.A.U., que permiten la vigencia inmediata de las reglas y reglamentos aprobados por las agencias administrativas federales. Esto, pues nuestra L.P.A.U. fue inspirada y recoge muchas de las doctrinas de la A.P.A. Fundación Surfrider, Inc. v. A.R.Pe., res. 17 de marzo de 2010, 2010 T.S.P.R. 37.

IV.

La A.P.A. es el estatuto federal que regula, entre otras cosas, lo relativo a la aprobación y publicación de reglas y reglamentos por parte de las agencias federales. En lo pertinente, la Sec. 553 de la A.P.A. prescribe la forma en que las agencias deben llevar a cabo los procedimientos previos a la aprobación de reglas y reglamentos. Por lo cual, regula lo relativo a la notificación de la propuesta de reglamentación, a la participación ciudadana y a la fecha de su entrada en vigor, entre otros asuntos.

La Sec. 553(b) de la A.P.A. exige que las agencias notifiquen que se proponen adoptar cierta reglamentación mediante la publicación de un aviso. A menos que una ley lo exija, no se deberá notificar la propuesta de adoptar una regla o reglamento ni se celebrarán vistas cuando se trate de: (1) reglas interpretativas, declaraciones generales de política pública, reglas de organización, procedimiento o práctica interna de la agencia; o, (2) cuando la agencia determina por justa causa ("Good Cause") -la cual deberá incorporar junto a una breve declaración de las razones para ello en el reglamente así promulgado- que la notificación y el procedimiento público es impráctico, innecesario o contrario al interés público. 5 U.S.C.A. sec. 553(b)(3).

El concepto de justa causa que exime del requisito de notificación y participación ciudadana, por ser ello impráctico, innecesario o contrario al orden público

contemplado en la A.P.A., se interpreta de forma restrictiva. Kollet v. Harris, 619 F.2d 134 (1st Cir. 1980). Ello, pues el propósito de la notificación y de la participación ciudadana es brindarle al público la oportunidad de influir sobre la agencia durante la etapa de formulación de reglas y reglamentos. Se exige pues, que las agencias justifiquen mediante determinaciones de hecho y derecho su incumplimiento con los requisitos de notificación y participación ciudadana. Stein, Mitchel, Mezines, Administrative Law, Sec. 15.05[6][b], Tomo 3 (2009). Un Reporte del Senado sobre esta cláusula de justa causa expresó que **"[it] is not an 'escape clause' which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding"**. *Íd*., citando el Reporte del Senado Núm. 79-752, 79no Congreso, 1ra Sesión (1946). (Énfasis suplido).

De lo anterior se desprende que si una agencia determina que existe justa causa para obviar los requisitos de notificación y participación ciudadana, podrá hacerlo siempre y cuando lo justifique e incorpore las razones en la regla o reglamento que se apruebe. Se desprende, además, que si la agencia determina que también existe justa causa para que la regla o reglamento entre en vigor inmediatamente o en algún momento antes de los 30 días luego de su publicación deberá incorporar las razones para ello en el texto que se publique.

V.

En vista de que el presente caso ha sido traído como una acción de nulidad bajo el procedimiento dispuesto en la Sec. 2.7 de la L.P.A.U., *supra*, debemos delimitar el término de treinta (30) días allí dispuesto, cuando se trata de un reglamento de emergencia aprobado bajo la Sec. 2.13 del mismo estatuto. De un examen cuidadoso de la L.P.A.U., encontramos que la aplicabilidad de la acción de nulidad sobre reglamentos de emergencia es incierta. Incluso, un análisis exhaustivo del historial legislativo de la L.P.A.U. reafirma un vacío normativo al respecto. Surge mayor incertidumbre ante el hecho de que la acción reconocida por esta sección de la ley ni existe ni podría existir bajo la A.P.A. federal. Véase W. Vázquez Irizarry, Derecho Administrativo, 79 Rev. Jur. U.P.R. 647, 656-658 (2010).

Ello ocurre porque, como hemos señalado, la acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento con las disposiciones de la L.P.A.U., debe iniciarse dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. Tomada en contexto, esa sección de la ley tiene como objetivo que una agencia se circunscriba a **todos** los requisitos de la L.P.A.U., incluidos los de la Sec. 2.13, *supra*, o de lo contrario enfrente una acción de nulidad.

En casos como el presente, cuando un reglamento ha sido aprobado mediante el procedimiento de emergencia y la

agencia reglamentadora viene obligada a realizar el procedimiento ordinario de publicación, comentarios y vistas públicas, con posterioridad a la puesta en vigencia del reglamento, no tendría sentido que la parte afectada tenga que esperar a que se complete ese proceso para poder impugnar la validez del reglamento. Ello, pondría a la parte que impugna la validez del reglamento en la desventajosa situación de tener que cumplir con él y, a la vez, tener que participar del procedimiento ordinario para exigirle a la agencia que cumpla con la ley. Por ende, debemos concluir que, en casos como el de autos, el término para llevar una acción de impugnación está suspendido. De esta forma, se salvaguarda la potestad que le reconoce el legislador a quien entiende que no se ha cumplido con los requisitos para un reglamento adoptado bajo la Sec. 2.13, *supra*, ya sea porque no se incluyó la certificación del Gobernador, porque existen deficiencias en la certificación o porque no se radicó en el Departamento de Estado.

Resolver lo contrario sobre este aspecto sería forzar a quien inste la referida acción a presentarla inmediatamente después de la presentación del reglamento ante el Departamento de Estado, cuando **todavía no se le ha dado publicidad al reglamento**, como ocurrió en el caso de autos. Como ha expresado el Profesor Fernández Quiñones, la acción de nulidad busca corregir los errores cometidos por la agencia durante el trámite procesal de su aprobación. Véase D. Fernández Quiñones, *La Revisión Judicial de las*

*Decisiones Administrativas*, 69 Rev. Jur. U.P.R. 1129, 1135 (2000). Sobre este mismo aspecto, Fernández Quiñones nos explica que la Sec. 2.7 de la L.P.A.U. tiene como objetivo que se hagan cumplir los "requisitos cuyo incumplimiento es ineludible". Fernández Quiñones, op cit., pág. 120. Entre esos requisitos están "los requisitos de notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus escritos y publicación de la regla adoptada". *Íd.* en la pág. 121.

Por ende, para salvaguardar el debido proceso preceptuado en la L.P.A.U., la acción de nulidad tiene que estar disponible hasta 30 días después de que se complete el procedimiento ordinario. De otra manera, la Sec. 2.7 que garantiza el cumplimiento con **todas** las disposiciones de la L.P.A.U., no estaría disponible para conformar el procedimiento ordinario a lo dispuesto en dicha ley. Así, concluimos que en el presente caso la acción de nulidad fue presentada oportunamente.

Habiendo considerado los asuntos concernientes al término jurisdiccional para la impugnación del procedimiento seguido por la agencia, procedemos a considerar los fundamentos de la misma. Como cuestión de umbral debemos determinar si se utilizó correctamente el procedimiento de aprobación de reglamentos de vigencia inmediata de la Sec. 2.13 de la L.P.A.U., *supra*.

De una simple lectura de la L.P.A.U. surge que el procedimiento de aprobación de reglamentos dispuesto en la

sección en cuestión es excepcional. Ello, pues permite la aprobación de normas legislativas sin notificar a la ciudadanía y sin brindarle la oportunidad de expresarse antes de que éstas entren en vigor. Lo anterior es contrario al procedimiento ordinario de notificación y participación ciudadana.

Según se desprende de la jurisprudencia reseñada, en la que analizamos el concepto "emergencia" en distintos contextos, la interpretación que se le ha dado ha variado a lo largo del tiempo. Así, en Meléndez v. Valdejully, *supra*, concebimos el concepto de "emergencia" como una situación que exige acción inmediata. Luego de analizar cuidadosamente dicha jurisprudencia, nos reiteramos, al igual que lo hicimos en Acevedo Vilá v. C.E.E., *supra*, en que, según discutiésemos en Meléndez v. Valdejully, *supra*, en el ámbito administrativo, el concepto 'emergencia' no necesariamente se limita a una circunstancia imprevista, sino que comprende un suceso o combinación y acumulación de circunstancias que exigen actuación inmediata. Ello refleja no sólo el entendimiento general que hemos tenido de dicho término, sino que es también cónsono con la flexibilidad que se pretende dar a las agencias para actuar ante situaciones que exigen su intervención inmediata.

Contrario a lo que alega el Estado, entendemos que en este caso el Departamento de Salud no cumplió con el estándar requerido para aprobar un reglamento de emergencia. No dudamos que el Departamento de Salud haya

determinado que se exigía su acción inmediata. Es innegable, sin embargo, que la referida Certificación es en extremo sucinta y carece de una explicación de las razones específicas para el uso del mecanismo de emergencia para aprobar el Reglamento 117-A. Al actuar de esa forma, el Estado no explicó las razones para utilizar el trámite de emergencia, suprimió innecesariamente la notificación a las partes afectadas por la nueva reglamentación según las exigencias del procedimiento ordinario de aprobación de reglamentos, impidió la participación ciudadana y la posibilidad de hacer enmiendas a la reglamentación tomando en consideración dicho insumo, y más importante aún, dejó fuera del expediente razones suficientes para poner a la Rama Judicial en posición de evaluar efectivamente su actuación, como evidentemente pudimos hacer en los casos sobre distintos tipos de emergencia que discutiéramos anteriormente.

HIMA sostiene que el hecho de que ni la agencia ni la Certificación del Gobernador consignan en tantas palabras las razones específicas por las cuales se empleó el método de aprobación de reglamentos de emergencia torna el Reglamento 117-A en *nulo ab initio*. Tiene razón. A pesar de que la Sec. 2.13 de la L.P.A.U. provee un mecanismo excepcional que se desvía del procedimiento ordinario de aprobación de reglas y reglamentos, éste debe interpretarse de forma restrictiva. Por ello, resolvemos que la agencia que solicite al Primer Ejecutivo que suscriba la

Certificación requerida por dicha sección debe consignar en el expediente del Reglamento las razones que justifican el uso del mecanismo extraordinario, de forma tal que, tanto el público que se vea afectado por el reglamento, como los tribunales, estén en mejor posición de entender y revisar las razones que tuvo el Estado para actuar de forma inmediata.

Nuestra experiencia, en el ejercicio de la función judicial revisora, ha sido que el uso y costumbre de los Gobernadores es acoger en sus certificaciones las razones expuestas por las agencias que justifican la preterición del trámite administrativo ordinario. De esta forma, se logra el objetivo de la mayor transparencia en dicho proceso. La prudencia aconseja que el Poder Ejecutivo continúe con esta práctica. Todo esto impedirá, a su vez, que esta excepción se convierta en "patente de corso" y así sirva de subterfugio para soslayar el mecanismo ordinario, pues no deseamos que la excepción suplante la norma.

Por todo lo anterior declaramos nulo *ab initio* el Reglamento adoptado por el Departamento de Salud. Resuelto lo anterior, no es necesario atender lo relativo al requisito de publicación por parte del Departamento de Estado de un aviso público respecto a la vigencia de reglamento.

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones. Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Centro Médico del Turabo, Inc.
D/B/A Grupo HIMA San Pablo

    Peticionarios

       v.                 CC-2009-463   Certiorari

Departamento de Salud del     Cons. CC-2009-468
Estado Libre Asociado de
Puerto Rico, etc.

    Recurridos


SENTENCIA

San Juan, Puerto Rico, a 16 de marzo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se declara nulo *ab initio* el Reglamento adoptado por el Departamento de Salud y se revoca la Sentencia del Tribunal de Apelaciones.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo